## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**FAMILIES AND YOUTH INCORPORATED,**
**a non-profit corporation; BORDER AREA**
**MENTAL HEALTH SERVICES, INC., a non-**
**profit corporation; JOHN DOE; JANE DOE 1**
**and JANE DOE 2,**

        Plaintiffs,

vs.                                                                 **No. CIV 01-0169 LCS**

**ROBERT T. MARUCA, Director of The New**
**Mexico Human Services Department, Medical**
**Assistance Division; and TIMOTHY**
**WESTMORELAND, Director of The Center for**
**Medicaid And State Operations of The Health Care**
**Financing Administration of the United States**
**Department of Health and Human Services,**

        Defendants.

### MEMORANDUM OPINION

**THIS MATTER** came before the Court on Defendant Maruca's Motion to Dismiss, or in

the Alternative, for Summary Judgment (Doc. 10), filed April 30, 2001, Plaintiffs' Motion to File

Supplemental Complaint, (Doc. 22), filed May 17, 2001, and Defendant Westmoreland's Motion to

Dismiss (Doc. 26), filed May 22, 2001.  The United States Magistrate Judge, acting upon consent

and designation pursuant 28 U.S.C. § 636(c), and having considered the pleadings, briefs, relevant

law, and being otherwise fully advised, finds that these Motions are well-taken and should be

**GRANTED**.

I.     **Background.**

     Plaintiffs filed their Complaint for Injunctive and Declaratory Relief Under the Medicaid Act

and the Civil Rights Act on February 9, 2001.  Plaintiffs are providers and consumers of behavioral

health services in Southern New Mexico.  (Compl. ¶¶ 4-9.)  Defendant Maruca is Director of New

Mexico Human Services Department, Medical Assistance Division ("NMHSD"), the state agency

responsible for administering the New Mexico medicaid program at the state level.  (Compl. ¶ 10.)

Defendant Westmoreland is the director of the Health Care Financing Administration ("HCFA"), a

federal agency within the United States Department of Health and Human Services responsible for

administering the Medicaid program at the federal level.  (Compl. ¶ 11.)

        In 1997, HCFA granted the State of New Mexico a waiver to implement a Medicaid Managed

Care Program for physical health services and behavioral health services called "Salud!."  (Compl.

¶ 21.)  Under the Salud! program, "managed care organizations" (MCOs) administer the delivery of

health care services to Medicaid beneficiaries.  (Compl. ¶ 22.)  Under the current system, the MCOs

are granted considerable discretion regarding the types of behavioral health services that are provided

and the types of providers eligible to furnish the services.  (*Id*.)

        In southern New Mexico, private non-profit corporations collaborated to form a "provider

network" that contracted with the MCOs to provide behavioral health services under Salud! for all

eligible Medicaid beneficiaries in southern New Mexico on a "capitated" basis for a lump sum

contract price.  (Compl. ¶ 23.)  Under Salud!, providers need not sign participation agreements with

NMHSD, but instead may contract with the MCOs.  (*Id.*)  The MCOs utilize clinical social workers

and other types of mental health professionals, who would not necessarily qualify as Medicaid

providers under a fee-for-service system.  (*Id.*)  The use of such personnel is less costly than the use

of providers qualified to contract directly.  (*Id*.)

        Prior to the October, 2000 expiration of the managed care waiver, HCFA contemplated

returning behavioral health services to the fee-for-service system.  (Compl. ¶ 25.)  On October 3, 2000, Defendant Maruca wrote a letter to HCFA, objecting to such an action and setting out adverse implications anticipated from returning to a fee-for-service system. (*Id*.)

On October 19, 2000, HCFA issued a letter stating that HCFA was unable to approve New Mexico's request for renewal of the managed care, (Compl. ¶ 26) and allowed New Mexico ninety days for New Mexico to transition behavioral health services from the managed care waiver program to the fee-for-service system.  (Compl. Ex. B.)  On November 2, 2000, Defendant Maruca notified New Mexico Medicaid providers that HCFA had denied the State's request for renewal of the waiver, (Compl. ¶ 27), and on November 7, 2000, Defendant Maruca wrote to providers and consumer advocates to announce the development of a committee to assist NMHSD in long-term planning for behavioral health services.  (Compl. ¶ 28.)  On November 14, 2000, Defendant Maruca notified providers that each provider needed an active Medicaid provider agreement in order to receive payment for services under the new fee-for-service system. (*Id*.)

Providers under the existing system objected to the changes and the swift transition to  a fee-for-service system.  (Compl. ¶ 30.)  On December 14, 2000, Defendant Westmoreland extended the transition deadline to February 28, 2001.  (Compl. ¶ 31.)  On the same day, Regional Care Coordinators met and observed that the transition to a fee-for-service system would result in three to six month delay in payments to providers, that some mental health services would be discontinued, and that mental health workers who were unable to obtain separate provider agreements would no longer be able to provide care, resulting in a decrease in availability of services, especially in rural areas. (Compl. ¶ 33.)  The Regional Care Coordinators also expressed the belief that there had been little planning within NMHSD to move to a fee-for-service system.  (*Id*.)  On December 29, 2000,

NMHSD notified Medicaid beneficiaries that the program would shift to fee-for-service. (Compl. ¶ 32.)

In their Supplemental Complaint, Plaintiffs allege that on February 15, 2001, HCFA reconsidered its October 19, 2000 determination denying Defendant Maruca's request for renewal of the Salud! program with respect to behavioral health services. (Supp. Compl.¶ 2.) HCFA reversed its prior decision and approved the Salud! managed care waiver for behavioral health services through October 21, 2002. (Supp. Compl. Ex. A.) HCFA based its reconsideration on evidence demonstrating that Salud! is consistent with the purpose of the Medicaid programs, will meet all statutory and regulatory requirements for assuring beneficiaries access to care and quality of services, and is cost effective. (Supp. Compl.¶ 3.)

HCFA's reconsideration was expressly conditioned on "New Mexico Behavioral Health Terms and Conditions," which were attached to the letter decision. (Supp. Compl. Ex. A.) The Terms and Conditions aim to redesign the behavioral health system in New Mexico to establish a system that addresses the concerns of beneficiaries and providers that were raised under the prior system. (Supp. Compl. Ex. A at 5.) The Terms and Conditions require NMHSD to establish an Advisory Committee, comprised of beneficiaries, providers and other representatives, to assist NMHSD in developing a modified design for a managed care behavioral health program. (*Id.*) The goals of the redesign effort are to address the concerns raised under the prior system, to reduce administrative layers, to develop standard service authorization and credentialing forms, to ensure direct funding to providers, and to ensure coordination of services. (*Id.*) The Terms and Conditions require that 85 percent of the payments made to MCOs for behavioral health services be paid to behavioral health providers for beneficiary behavioral health care and services. (*Id.*) Additionally,

the NMHSD must involve stakeholders in the process, ensure that adequate resources are in place to maintain the system, secure an adequate state-wide network of providers, review the availability of community-based mental health services, and include a plan for enhancement of community-based capacity, as appropriate. (*Id.*)

In order to achieve these goals, the Terms and Conditions require, *inter alia*, bi-monthly audits of service authorization decisions, toll-free numbers for beneficiaries and providers to report concerns, a grievance and appeals process, an ombudsman program, a survey of beneficiaries with mental health needs, an early warning system to track key variables of program performance, quarterly network capacity reports from MCOs, and monitoring and reports regarding MCO staff turnover and credentials. (Supp. Compl. Ex. A at 3-4.)

Plaintiffs allege that Defendant Maruca has failed to take appropriate steps necessary to assure that the Terms and Conditions will be satisfied and that applicable provisions to the Medicaid statute and regulations will be followed. (Supp. Compl.¶ 5.) As an example, Plaintiffs point to the Request for Proposal (RFP) issued by Defendant Maruca on March 5, 2001. (*Id.*) Plaintiffs contend that the RFP will materially change the current manner of delivering mental health care services in southern New Mexico, effective July 1, 2001, by eliminating critical agencies such as Rio Grande Behavioral Health Services, Inc. (*Id.*) Plaintiffs further assert that the RFP was issued without adequate input from stakeholders. (*Id.*)

In the original Complaint, incorporated by reference into the Supplemental Complaint, Plaintiffs seek a declaration of the parties respective rights and responsibilities, temporary, preliminary and permanent injunctive relief prohibiting Defendants from implementing the proposed change from delivering and paying for behavioral health services under the Medicaid managed care program,

5

Salud!, to a fee-for-service system, until and unless Defendants comply with all applicable laws and regulations and engage in deliberative and meaningful decision-making regarding any proposed change, and for costs, including attorney fees.  In the Supplemental Complaint, Plaintiffs additionally seek a declaration of the parties respective rights and responsibilities, temporary, preliminary and permanent injunctive relief prohibiting Defendants from implementing any changes in the current system for delivering and paying for behavioral health services under the Medicaid managed care system in southern New Mexico, and for costs, including attorney fees.

On April 30, 2001, Defendant Maruca filed a Motion to Dismiss, or in the Alternative, for Summary Judgment, arguing that the case should be dismissed based on mootness.  On May 17, 2001, Plaintiffs filed their Motion to File Supplemental Complaint, seeking to include allegations regarding events that occurred subsequent to the filing of the Complaint.  On May 22, 2001, Defendant Westmoreland filed a Motion to Dismiss, arguing that the case should be dismissed based on mootness, failure to state a claim, and ripeness.

**II.      Whether Plaintiffs' Motion to File Supplemental Complaint should be granted.**

Plaintiffs seek to supplement their Complaint in order to include allegations concerning events that occurred after the original Complaint was filed, specifically allegations regarding HCFA's February 15, 2001 reconsideration letter and NMHSD's March 5, 2001 Request for Proposal. Plaintiffs attached their Supplemental Complaint to their Motion, which incorporates the allegations of the original Complaint by reference.  Defendant Maruca opposes supplementation of the Complaint on the basis of futility.

"Upon motion of a party, the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or

6

events which have happened since the date of the pleading sought to be supplemented." FED. R. CIV. P. 15(d).  This Court enjoys broad discretion to permit a party to serve a  supplemental pleading setting forth post-complaint transactions, occurrences or events under Rule 15(d).  *Gillihan v. Shillinger*, 872 F. 2d 935, 941 (10th Cir.1989); *Reid v. International Union, UAW, Dist. Lodge 1093*, 479 F. 2d 517, 520 (10th Cir. 1973).  Leave to supplement a complaint should be liberally granted unless good reason exists for denying leave, such as prejudice to the defendants.  *Gillihan*, 872 F. 2d at 941.  Plaintiffs moved to supplement their Compliant soon after the events occurred and while underlying facts continued to unfold.  No answers have been filed and general discovery has not begun.  Plaintiffs' motion was made promptly and concerned subsequently occurring facts relating to their original claims.  Based on these factors, Plaintiffs' Motion to File Supplemental Complaint shall be granted.  Plaintiffs' Supplemental Complaint, hereinafter "Complaint," incorporates the allegations of the original Complaint by reference.

### III.     Whether Plaintiffs Present a Justiciable Controversy.

Defendants contend that this case should be dismissed as moot.  Article III limits the exercise of the "judicial Power" to actual "cases" or "controversies."  U.S. CONST. art. III, § 2.  The case or controversy limitation prohibits a federal court from rendering an advisory opinion.  *See North Carolina v. Rice*, 404 U.S. 244, 246 (1971).  Because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction, the court must determine whether a case is moot before proceeding to the merits.  *Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F. 3d 1174, 1181-82 (10th Cir.2000); *Phelps v. Hamilton*, 122 F. 3d 885, 891 (10th Cir.1997). No justiciable controversy exists when the question sought to be adjudicated has been mooted by subsequent developments.  *Flast v. Cohen*, 392 U.S. 83, 95 (1967).  "If an event occurs

while a case is pending that heals the injury and only prospective relief has been sought, the case must be dismissed." *Southern Utah Wilderness Alliance v. Smith*, 110 F. 3d 724, 727 (10th Cir. 1997) (*citing Fund for Animals v. Babbitt*, 89 F. 3d 128, 133 (2d Cir. 1996)). In this case, subsequent events have rendered this case moot.

Plaintiffs' seek to abrogate HCFA's October 19, 2000 denial of NMHSD's request to renew the managed care waiver.  HCFA's October 19, 2000 decision would have required New Mexico to return to a fee-for-service system for delivering behavioral health services.  However, on February 15, 2001, HCFA reconsidered its prior decision and extended the managed care system in New Mexico.  Because the February 15, 2001 reconsideration effectively reversed the October 19, 2000 denial, Plaintiffs have received the relief that they originally requested in the Complaint.  Thus, Plaintiffs' claims are moot because they no longer present a live case or controversy.

The Complaint should also be dismissed based on the doctrine of prudential "prudential" or "remedial" mootness.  *See Southern Utah Wilderness Alliance*, 110 F. 3d at 727; *State of New Mexico v. Goldschmidt*, 629 F. 2d 665, 669 (10th Cir. 1980).  This doctrine holds that, as a matter of prudence and sound discretion, a court may withhold drastic injunctive relief, even though there might be, in the technical sense, the power to grant such relief. *See United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953) (the Supreme Court's original formulation of the test for prudential mootness holds that "the moving party must satisfy the court that . . . there exists some cognizable danger of recurrent violation, something more than mere possibility which serves to keep the case alive").

Courts generally invoke the prudential mootness doctrine in the context of a request for preliminary injunction, where the defendant, usually the government, is in the process of changing its

policies such that any repeat of the actions in question is unlikely.  *See Bldg. & Constr. Dep't v. Rockwell Int'l Corp.*, 7 F. 3d 1487, 1492 (10th Cir.1993).  The doctrine is rooted in the court's general discretion in creating prospective remedies, "especially with regard to the government of the United States where 'considerations of ... comity for coordinate branches of government' come into play." *Id.*

In assessing whether to stay its hand, the Court inquires whether circumstances have changed since the beginning of the litigation that forestall any occasion for meaningful relief.  *Southern Utah Wilderness Alliance*, 110 F. 3d at 728.  In this case, the October 19, 2000 decision to move to a fee-for-service system was reversed and Defendants are currently in the process of redesigning the New Mexico Medicaid program for delivering behavior health services.  The final contours of the managed care program have yet to be determined.  Plaintiffs fail to explain how a declaration or an injunction would provide any meaningful relief at this juncture.  Accordingly, the Court finds that it should refrain from exercising its authority based on considerations of prudential mootness.

In addition to being moot, Plaintiffs' allegations are not ripe for judicial review.  The "basic rationale" of the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."  *Utah v. U.S. Dept. of Interior*, 210 F. 3d 1193, 1196 (10th Cir. 2000) (*quoting Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49 (1967), *abrogated on other grounds Califano v. Sanders*, 430 U.S. 99(1977)).  "In short, the doctrine of ripeness is intended to forestall judicial determinations of disputes until the controversy is presented in clean-cut and concrete form."  *New Mexicans for Bill Richardson v.*

*Gonzales*, 64 F. 3d 1495, 1499 (10th Cir.1995).

In making a ripeness determination, the Court must consider (1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented. *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 732-33, (1998).  Consideration of these factors leads to the conclusion that Plaintiffs' claims are not ripe for judicial review.

Defendants are in the process of redesigning the New Mexico behavioral health managed care system for Medicaid beneficiaries.  Plaintiffs allege that Defendant Maruca has failed to take appropriate steps necessary to assure that the Terms and Conditions will be satisfied and that applicable provisions to the Medicaid statute and regulations will be followed.  As an example, Plaintiffs point to the Request for Proposal (RFP) issued by Defendant Maruca on March 5, 2001. Plaintiffs contend that the RFP will materially change the current manner of delivering mental health care services in southern New Mexico, effective July 1, 2001, by eliminating critical agencies such as Rio Grande Behavioral Health Services, Inc. and that the RFP was issued without adequate input from stakeholders.  These pithy allegations are insufficient to establish that delayed review would cause hardship to Plaintiffs.

Conversely, judicial intervention in the overhaul the New Mexico Medicaid system would inappropriately interfere with further administrative action.  Defendants are working to revamp the New Mexico Medicaid system with input from beneficiaries, providers and consumer advocates. This Court is loath to meddle in such a classically state function.  This factor is especially critical in light of the fact that the Salud! program is already the subject of a federal lawsuit brought by Medicaid

beneficiaries under the Americans with Disabilities Act.  *See Taylor v. Otten*, No. CIV 98-1382 JC/DJS.  Judicial action in the instant case could lead to inconsistent results and hamper current attempts to improve the program.

Finally, the challenged revisions have not been implemented.  Any judicial action would be based on pure conjecture.  Under these circumstances, the Court would clearly benefit from further factual development at the administrative level of the issues presented.  Accordingly, this case should be dismissed because Plaintiffs' claims are not ripe for federal judicial review.

## IV.    Conclusion.

Plaintiffs' Motion to File Supplemental Complaint shall be granted.  The Court has determined that Plaintiffs' Complaint, as supplemented, shall be dismissed based on the doctrines of mootness, prudential mootness, and ripeness.

**AN ORDER CONSISTENT WITH THIS OPINION SHALL ISSUE.**

**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**